## CONNOR v. RENNEKER.

1. Plaintiff, acting as an agent, enquired of defendant whether $20,000 cash would buy his land. Defendant said it would. The agent then said he would return to his principals and confer with them. *Held*, that this was not a contract.

2. Afterwards, at the instance of plaintiff, defendant wrote a letter to him, offering to accept $20,000 cash, and allowing six weeks in which to conclude the sale, "provided other parties do not apply for the same in the meantime, in which case I will notify you and hold the offer open for your consideration for five days, in which time you must give me your answer." To this letter there was no reply, and within three weeks defendant sold the land to another party without notice to the plaintiff. *Held*, that this was a mere offer, and without consideration, and therefore not binding on defendant.

Before COTHRAN, J., Charleston, November, 1885.

This was an action by W. D. Connor, as agent, against Eliza-

beth C. Renneker, for damages for breach of a contract made by her through J. H. Renneker, jr., her husband and agent. The opinion states the case.

*Messrs. Simons & Cappelmann*, for appellant, cited 5 *Stew. & Port.*, 264; 2 *McCord*, 298; 4 *Bing.*, 653; 3 *Humph.*, 19.

*Messrs. Simonton & Barker*, contra.

October 11, 1886. The opinion of the court was delivered by Mr. JUSTICE McGOWAN. This was an action for damages for an alleged breach of contract, under the following circumstances. The defendant having a large body of timber lands for sale in the County of Colleton, the plaintiff, as the agent of certain parties, saw the defendant upon the subject of purchase. Renneker asked for the land one dollar per acre, viz., $25,000. During the conversation the plaintiff said, "I suppose $20,000 cash would buy the property ; he (Renneker) studied a moment and said, It will. I (Connor) said, 1 am not purchasing for myself. I am only employed to see you. The gentlemen who want this land live North, and I will go back and confer with them. * * * I returned and reported to these gentlemen what Mr. Renneker said and the offer I had ventured to make. They said, if the land was as represented, they would take it. I was ordered then to go back to Charleston and not to risk it on a mere verbal contract. They wanted a written contract, and said they would not venture to negotiate the sale unless they had some assurance that they would have time to examine the property and titles, and so on," &c. The following letter was then delivered: "Charleston, S. C., Nov. 28, 1882. Mr. W. D. Connor, agent, &c. George's Station. Dear Sir : In answer to your enquiries, I will sell you the land in Colleton County for twenty thousand ($20,000) dollars cash, and will allow you six weeks in which to conclude the sale, provided that other parties do not apply for the same in the meantime, in which case I will notify you, and hold the offer open for your consideration for five days, in which time you must give me your answer. (Signed) J. H. Renneker, jr. Boinest."

This letter was never answered in any way, and on December 15, 1882, the land was sold, without notice, to another person for $20,500. Thereupon the plaintiff brought this action for damages for breach of alleged contract of sale. The cause came on for trial before Judge Cothran, who, upon motion for non-suit, ruled that there was in fact no complete contract of sale, that there was a lack of mutuality and consideration, and dismissed the complaint. The plaintiff appeals to this court upon the following grounds :

"First. Because his honor erred in holding that there was a want of mutuality in the contract sued on, whereas the evidence shows an offer to purchase on the part of the plaintiff, and an acceptance of this offer by the defendant, evidenced by the testimony and the written memorandum signed at the time.

"Second. Because his honor erred in holding that the matter was certainly open when this paper was signed, whereas the evidence shows that a positive offer of purchase had been made by the plaintiff and accepted by the defendant, and that the paper signed by the defendant was a memorandum of that offer and acceptance.

"Third. Because his honor erred in holding that he could not see where, at any time, the minds of these parties were 'at one,' whereas the evidence shows that when the defendant agreed to give the written memorandum asked for by the plaintiff, the conditions of the contract were mutually understood and agreed to by and between the plaintiff and the defendant."

The whole appeal is based on the idea that the plaintiff, as agent, made a distinct and positive offer of $20,000 for the lands, which was accepted by the defendant. In our judgment this view is entirely unsupported either by the parol testimony or the written memorandum. We do not think that there ever was a positive unconditional offer by the plaintiff for the lands. It was not such an offer to say by way of inquiry, "I suppose $20,000 cash would buy this property ?" and when answered in the affirmative, to say, "I am not purchasing for myself. I am only employed to see you. The gentlemen who want this land live North, and I will go back and confer with them," &c. Up to this time certainly nothing had occurred which could amount to anything like a contract on the part of the plaintiff which the

defendant could have enforced against him in a court of justice. On the contrary, the plaintiff, being a mere agent to make enquiries about the matter, seems to have most carefully avoided entering into any such contract.

Then as to the written memorandum. Its very terms show that there had been no contract of sale, and that the memorandum itself was only an "offer" on the part of the defendant, allowing six weeks in which to conclude the sale, provided that others did not apply in the meantime. This grant of time amounted to nothing, for other parties did apply. But it is insisted that in such case the plaintiff was entitled to have five days' notice in which to give his answer, and that the failure to give him such preference before sale was a breach of the contract, for which the plaintiff is entitled to recover damages. That must depend upon another question, viz., whether the declaration of the defendant that, in case of another offer, he would give such notice and preference, was a legal and binding contract on her part, for the breach of which the plaintiff may recover damages. As we understand it, such declaration when made was purely voluntary and without consideration.

It is certainly elementary that it takes two to make a bargain, and that all contracts not under seal must be supported by proof of sufficient consideration. So far as the question of consideration is concerned, the memorandum in writing was no more than parol. We cannot see that the plaintiff gave any consideration for the promise that, in a certain case, he should receive the notice claimed. It does not appear that he ever answered the letter or accepted the terms offered within the time allowed, or in any way paid money or incurred obligation in consideration of the aforesaid promise to give him notice and preference; and it seems to us that the declaration or promise of the defendant was without consideration, and might be withdrawn by him at any time prior to the acceptance by the plaintiff of the terms of sale offered. "A promise by one with nothing in return is void, as if he undertakes in writing to convey land to another, who neither agrees to buy nor pay anything for the premises; or to remain with and learn a trade of another who does not agree to teach." *Bish. Cont.*, § 429; *Chit. Cont.*, 17. "It is unquestionably true

as a general proposition that a contract cannot bind the party proposing it, and indeed that it is no contract until the acceptance of the offer by the party receiving it is in some way actually or constructively communicated to the party making the offer." *Pars. Cont.*, 483; *Burnet* v. *Bisco*, 4 *Johns.*, 235; *Tucker* v. *Woods*, 12 *Id.*, 190; *Boston & Maine R. R. Co.* v. *Bartlett*, 3 *Cush.*, 224.

In the last case cited the court say: "The counsel for the defendants is most surely in the right, in saying that the writing when made was without consideration, and did not therefore form a contract. It was then but an offer to contract; and the parties making the offer most undoubtedly might have withdrawn it at any time before acceptance. * * * A different doctrine, however, prevails in France and Scotland and Holland. It is there held, that whenever an offer is made, granting to a party certain time within which he is to be entitled to decide whether he will accept it or not, the party making such offer is not at liberty to withdraw it before the lapse of the appointed time. There are certainly very strong reasons in support of this doctrine. Highly respectable authors regard it as inconsistent with the plain principles of equity that a person who has been induced to rely on such an engagement should have no remedy in case of disappointment. But whether wisely and equitably or not, the common law unyieldingly insists upon a consideration, or a paper with a seal attached. The authorities, both English and American, in support of this view of the subject are very numerous and decisive, but it is not deemed to be needful or expedient to refer particularly to them," &c. See *Cooke* v. *Oxley*, 3 *T. R.*, 653, and *Dickinson* v. *Dodds*, 13 *Eng. Rep.* (*Moak*), 854; 2 *Chan. Div.*, 463.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.